# HAMILTON NAT. BANK v. WOODS et al.—238 S. W. (2d) 109.

Eastern Section.  September 17, 1948.

Petition for Certiorari denied by Supreme Court, January 25, 1949.

362

W. L. Tillett, Chattanooga, for plaintiff in error.

Wilkerson & Wilkerson, and J. F. Atchley, all of Chattanooga, for defendants in error.

GOODMAN, J.   This controversy is somewhat of a sequel to the case of Maribelle Woods v. Hamilton National Bank, which was considered upon appeal by this court at the September term, 1946, wherein, in an opin-

ion by Judge Hale, entered November 13, 1946, this court, in substance, held that a note purchased by the complainant had previously been paid and extinguished under the Negotiable Instruments Law, Code, Section 7325 et seq. and, therefore, did not furnish basis for the assertion of the vendor's lien upon the property of her mother and father originally securing the same.

The present case involves a garnishment served upon Chandler King from a judgment in the sum of $4,060 obtained by the Hamilton National Bank against M. S. Woods and wife, Mary G. Woods. The answer of the garnishee, Chandler King, is of the gravamen of the present suit and, in view of its materiality, is quoted as follows:

"This defendant is not and was not at the date of the service of the writ of garnishment upon him indebted to M. S. Woods in any amount.

"This defendant shows that he is the president and general manager of the Braser Company, a Tennessee corporation, and that prior to the incorporation of the Braser Company this defendant operated said business as trustee for the benefit of his minor children and, after the death of his minor children, for the benefit of himself. Defendant shows that said defendant M. S. Woods was and has been for a number of years employed by the Braser Company as a salesman and during the course of his employment he has become indebted to the said Braser Company for advances against his commissions in an amount varying between $700.00 and $1000.00. Defendant shows that some time prior to the year 1944 the said M. S. Woods delivered to this defendant a note dated November 1, 1933 in the principal sum of $1500.00 signed by M. S. Woods and wife Mary Woods, payable to

P. A. Smith and endorsed without recourse by the said P. A. Smith, said note being secured by a vendor's lien and a deed of trust on certain real estate in Hamilton County, Tennessee, described as being Lot No. 10, Block No. 46, James Addition to Highland Park, in said County. Said note was delivered to this defendant, Chandler King, by the said M. S. Woods as additional security for the payment of the indebtedness of the said M. S. Woods to the Braser Company.

"Defendant avers that some time thereafter, to wit, on or about October 12, 1944, said note was purchased from this defendant by Maribelle Woods, the daughter of the said M. S. Woods, for $1500.00. The purchase price was paid to this defendant by check signed by the said Maribelle Woods in the sum of $1500.00 and said check was cashed and deposited to the defendant's personal account. Defendant was advised and believes that said sale of said note to the said Maribelle Woods was a bona fide sale and that this defendant is entitled to said $1500.00 and that the said M. S. Woods is not entitled to any part of said $1500.00. Defendant is advised, however, that this transaction has been the subject of litigation between the said Maribelle Woods and the Hamilton National Bank in cause No. 29229 in the Chancery Court of Hamilton County, Tennessee and that by final decree entered in said cause this Court has adjudged that said $1500.00 note had been paid and satisfied prior to the time of its purchase from this defendant by the said Maribelle Woods. This defendant is not fully informed as to whether the $1500.00 representing the purchase price of said note legally belongs to this defendant, whether it belongs to the said Maribelle Woods or whether the said M. S. Woods has any legal or equitable claim to any part of said money.

"Wherefore, this defendant submits the facts to the court for its judgment thereon as to whether he is indebted to or has in his possession or control any choses in action or other legal or equitable interest to which the said M. S. Woods may be entitled."

This answer was filed on August 18, 1947, and on the same date (order nunc pro tunc), the Circuit Judge held that the plaintiff, Hamilton National Bank, was entitled to have and recover of the garnishee the sum of $777.13, the same being the difference between the amount of M. S. Woods' indebtedness to Chandler King at the time, and the sum of $1500 which had been paid to the latter by Maribelle Woods. On August 20, 1947, a motion was made by Wilkerson & Wilkerson, attorneys for the defendants in the suit in which the judgment upon which said garnishment was issued was entered, to set aside and vacate said judgment against Chandler King, garnishee, and to grant a new trial. This motion was supported by the affidavit of W. E. Wilkerson, who, in substance, deposed that M. S. Woods was then out of the State, and that upon an examination of the Chancery Court proceedings, and to the best of his knowledge, information and belief, the $1,500 paid to King was paid out of the personal funds of Maribelle Woods and that M. S. Woods did not provide or contribute any part thereof. On August 22, 1947, a motion was made on behalf of Maribelle Woods, likewise then absent from the State of Tennessee, by J. F. Atchley, her attorney in the case of Maribelle Woods v. Hamilton National Bank, aforementioned, to be allowed to intervene by petition in the cause. The same was subsequently amended in open court so as to move the court to set aside the judgment. This motion was supported by the affidavit of J. F. Atchley, in substance and effect, that, according to affi-

ant's advice, the judgment rendered was against funds in the hands of Chandler King, belonging to Maribelle Woods. These motions came on to be heard on August 25, 1947 (order nunc pro tunc), and, upon consideration thereof, the court continued the same to the next term of the Circuit Court of Hamilton County, the same to be heard on September 22, 1947; the order of the court providing that ". . . said Maribelle Woods may file an intervening petition in this case as sought in her motion subject to legal exceptions . . .". On September 20, 1947, the petitioner, Maribelle Woods, filed her petition setting forth the fact of her purchase of the note from Chandler King for $1,500, the final decision in the Chancery Court case, afore referred to, that said note had been paid off by the makers prior to transfer, and asserting the right to be reimbursed out of the funds held by Chandler King in the amount of the note, or at least for the sum of $777.73 which the court had previously adjudged as belonging to the Hamilton National Bank. She sought, as relief, the vacation of the judgment theretofore rendered and a new trial. The Hamilton National Bank filed answer to the intervening petition, denying the material averments thereof and specifically pleading estoppel, laches notice and fraud. The legal sufficiency of the petition was challenged as was petitioner's right to intervene.

The case was set for hearing on October 6, 1947, upon oral testimony and the various exhibits filed thereto, whereupon the court took the case under advisement, rendering an opinion on November 10, 1947. The Circuit Judge found in favor of the petitioner, Maribelle Woods, ordered the judgment theretofore entered set aside, and directed payment to her of said sum of $777.13. The Hamilton National Bank thereupon seasonably filed a

motion for a new trial which was overruled and an appeal in the nature of a writ of error was prayed and perfected to this court. Thus we find the state of the pleadings and proceedings as they come to us for consideration.

For initial determination is the question of petitioner's right to intervene. In our opinion, under the practice in this State, intervention, by a third party demonstrating an interest in the subject matter, will be permitted upon petition seasonably filed; or even after judgment, provided the rights of the original litigants are not injuriously affected, the court still retains jurisdiction over the judgment and subject matter, 47 C. J. pp. 110, 111, and good and sufficient cause is shown for the delay. This is in accord with the principles of Equity (Gibson, Sec. 794 et seq.) and there is no reason why the same should not be applicable in a proceeding such as this. Particularly is this true where a garnishee files answer in the nature of an interpleader in a court of law.

Plaintiff-in-error challenges petitioner's right to intervene on the grounds that the latter has no interest in the subject matter and that no specific property is involved. Cited in support thereof is Section 8623 of the Code of Tennessee which provides: ''In actions for the recovery of property, any person not a party thereto, on showing himself interested in the subject-matter of the suit, may be allowed to appear as defendant therein.'' ·

In Marlin v. Merrill, 25 Tenn. App. 328, 156 S. W. (2d) 814, 819, on petition to rehear, this court (Middle Section) in an opinion by Judge Felts, said, ''To enable one to intervene under this section, he must show himself 'interested in the subject-matter of the suit.' He must

have an interest in the property itself, a title to it, a lien on it, or a right to its possession. Without such an interest in the property, he cannot come in under this statute. Haynes v. Rizer, 82 Tenn. 246; Stretch v. Stretch, 2 Tenn. Ch., 140. That one as a creditor might have a right to attach the property, or to reduce his debt to judgment and have execution levied on the property, is not enough to entitle him to intervene under this statute." This is the principal case relied upon on behalf of plaintiff-in-error on this proposition. And we consider the expression of the court therein, as afore-quoted, to constitute a correct and concise construction of the statute. The defendants-in-error rely upon American Milling Co. v. Cairo Oil Mill Co., 10 Tenn. App. 450. We conceive no conflict between this case and Marlin v. Merrill, supra. Nor does the fact that it was a proceeding in equity render the principles therein annunciated inapplicable to the present case.

It is insisted that the court was without authority to set aside the judgment rendered in favor of the bank and grant a new trial at a subsequent term, that the judgment became final at the close of the May term; that the intervention came too late. In Life & Casualty Ins. Co. v. Baber, 166 Tenn. 10, 57 S. W. (2d) 791, the court held that a motion to set aside a default judgment, if formally entered on the motion docket within thirty days, kept the matter open until the court acted on the motion; citing Louisville & N. R. Co. v. Ray, 124 Tenn. 16, 134 S. W. 858; and distinguishing Ellis v. Ellis, 92 Tenn. 471, 22 S. W. 1, where the application for a new trial was not made within thirty days from the rendition of the judgment. And in Payne v. Eureka-Security Fire & Marine Ins. Co., 173 Tenn. 659, 122 S. W. (2d) 431, the court held that if a motion to set aside a judgment is

properly entered within thirty days on the motion docket, the court may consider the motion after thirty days have expired; citing Life & Casualty Ins. Co. v. Baber, supra, and Liner v. Jenkins, 170 Tenn. 1, 91 S. W. (2d) 289. But it is said that counsel for petitioner was without authority to act for her in her absence, and that, moreover, she being a stranger to the proceedings could not file a motion for a new trial. We believe that, under the circumstances heretofore disclosed, counsel was within his authority in seeking an abeyance of action until petitioner could be apprised of the situation and act for herself; also that the trial judge was within his discretion and authority in continuing the motion until the succeeding term of court. And certainly so long as the trial judge had control over the judgment, he could set the same aside and permit an intervening petition to be filed, if the right to intervene otherwise existed.

The contention is made that no specific property is here involved and further that petitioner is a mere creditor who should not be permitted to intervene pending establishment and adjudication of her claim, on authority of Section 8623 of the Code, Haynes v. Rizer, 82 Tenn. 246, and Marlin v. Merrill, supra. As opposed to her right of recovery against the garnishee, King, of the amount paid to him in purchase of the note, subsequently held to have been paid and extinguished, it is said that by reason of the knowledge of the note's infirmities, by petitioner's father and agent, at the time of purchase, she would be precluded in an action against an endorser without recourse; citing Freeman v. Citizens' Nat. Bank, 167 Tenn. 399, 70 S. W. (2d) 25, 28. The defenses of fraud, estoppel and laches are also invoked.

It appears to us that the issues in this case have become unduly complicated. Simply stated, the facts are

these: The garnishee having paid into court the sum of $777.13, representing the difference between $1,500 and the amount which was held to be owed to him by the judgment, debtor is asserting no claim here against this fund, which is in dispute. His answer to the garnishment was in the nature of an interpleader invoking the judgment of the court as to the rights of the parties. The defendants M. S. Woods and Mary G. Woods do not claim the money. So that the controversy with respect thereto lies between the Hamilton National Bank and Maribelle Woods. All parties of interest were before the court at the time of the adjudication below and, in our opinion, the trial judge was within his authority in determining to whom the money should go. Regardless of the merits of intervenor's claim against the garnishee, Chandler King, Hamilton National Bank's right to the fund is dependent upon establishment of the fact that the consideration paid to King by Maribelle Woods, in purchase of the note, was furnished by her father, M. S. Woods. Failing in this, the bank can have no concern with the disposition of the money. Although the transactions through which the note of M. S. Woods and wife was obtained by Chandler King, and subsequently endorsed by the latter, without recourse, to the daughter of the Makers are subject to great scrutiny, and as held by this court in the former case, constituted ". . . an attempted fraud on the defendant Bank, brought about by the machinations of Woods who used his employer and daughter as pawns'', if the money paid to King for the note was from the personal funds of Maribelle Woods, we know of no principle of law which would forfeit the same to the judgment creditor of M. S. Woods and Mary G. Woods. We view the determination of the learned trial judge, with respect to the funds in controversy, as

correct. The bank account out of which Maribelle Woods paid the $1,500 to King was made up of deposits of her own money as well as money belonging to her father. In this connection, the findings of the trial judge, in which we concur, were as follows:

"Maribelle Woods procured the money to make the check good by transferring to her checking account $689.23 from her savings account and $375.00 from sale of bond. The savings account was made up of small deposits. The largest deposit previous to the withdrawal above mentioned was $163.66 on January 8, 1944. The withdrawal from the savings account and the proceeds from the sale of the bond amounted to $1,014.23 which applied on the $1500.00 check. This only left $485.77 from the checking account to be applied on the check above mentioned. After the check was honored there only remained $36.04. All of the large deposits in the checking account apparently came from M. S. Woods except the deposit for $232.53 which Maribelle Wood says came from her accumulated checks." And further, "On the proof now before the court proceeds from the sale of the bond and the savings account belonged to Maribelle Wood." Her personal funds, therefore, represented in the payment to King, exceeded the amount here in controversy. Hence there is no basis on which the same may be applied to the judgment indebtedness of her father.

■■ We do not view the defenses of estoppel and laches, sufficient under the facts to bar the intervenor. As to judicial estoppel, there is considerable authority for the rule that where a party takes a position in one suit inconsistent with that taken in a former one, the position first asserted must have been successfully maintained in order to furnish basis for the defense of estop-

pel in the latter one. 19 Am. Jur., 710; Royston v. McCulley, Tenn. Ch. App., 59 S. W. 725, 52 L. R. A. 899. Neither will estoppel arise by reason of prior testimony ". . . which represents a mistake of law on the part of the witness or which is a mere matter of opinion." 19 Am. Jur., 713. We do not consider the unsuccessful contentions made by intervenor as complainant in the former proceeding to the effect that the note was sold to King and that it was good and valid when purchased by her from him to preclude her from her asserting that which was held by the court in that case that the note had previously paid off and extinguished and was unenforceable by her and consequently valueless.

■ ■ One of the essential elements of the defense of laches is the disclosure of injury or prejudice to the opposing party. 19 Am. Jur., Secs. 498, 508. The defense of laches ". . . is a branch of the law of equitable estoppel, and . . . it is not mere delay, but delay of a character which materially and prejudicially affects the rights of a defendant." Robertson v. Davis, 169 Tenn. 659, 90 S. W. (2d) 746, 751. See also Baker v. Baker, 24 Tenn. App. 220, 142 S. W. (2d) 737; American Nat. Ins. Co. v. McPhetridge, 28 Tenn. App. 145, 187 S. W. (2d) 640; State v. Benner, 182 Tenn. 395, 187 S. W. (2d) 609; State ex rel. McConnell v. First State Bank, 22 Tenn. App. 577, 124 S. W. (2d) 726; Needham v. Caldwell, 25 Tenn. App. 189, 154 S. W. (2d) 535; Fisher v. Durand, 179 Tenn. 635, 169 S. W. (2d) 671. Although several months elapsed between the final determination of intervenor's suit against the Bank and the assertion of her rights against the funds in the hands of King, it does not appear that the Bank was prejudiced by the delay and it is shown that she had received no personal notice of the final decision of the court in the former

action prior to her return to Chattanooga shortly before her intervening petition was filed. ''There can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend.'' Thruston v. Nashville & American Trust Co., D. C., 32 F. Supp. 929, 938; Halstead v. Grinnan, 152 U. S. 412, 14 S. Ct. 641, 38 L. Ed. 495. Of course intervenor was chargeable with notice of the entry of all orders and decrees in the suit in which she was plaintiff, but her lack of actual knowledge must be said to extenuate any delinquency on her part to some extent.

The assignments of error will be overruled and the judgment of the lower court affirmed. Plaintiff in error and the sureties on its appeal bond will pay the costs of the appeal.

McAmis and Howard, JJ., concur.

### On Petition to Rehear.

GOODMAN, J. Plaintiff-in-error, Hamilton National Bank, has filed a petition to rehear predicated generally upon the grounds that the judgment rendered in favor of Maribelle Woods was erroneous, that she was a stranger to the cause and was not entitled to intervene therein; that she demonstrated no interest in the subject matter of a suit for the recovery of property as is contemplated under the provisions of Section 8623 of the Code of Tennessee. Specifically, it is said:

(1) ''That this court erroneously held that, inasmuch as the money once belonged to Maribelle Woods (which we do not admit except for the argument), it was still her money, and the plaintiff-in-error (petitioner here) was not concerned with what was done with it. . . .''

(2) "The Court erred in stating and deciding that the answer of Chandler King was the gravaman of the present suit. . . ."

(3) "The Court erred in finding and holding that the answer of King was filed in the nature of an interpleader. . . ."

(4) "The Court erred in holding, at least impliedly, that it was proper for Maribelle Woods to intervene in this case and ask for a new trial so far as concerned the final judgment which was rendered in the scire facias proceeding, . . ."

(5) "It was also error for a judgment to be rendered against King, and in favor of Maribelle Woods, for this sum of $777.73; and this Court should have held such to be error."

We have carefully considered the petition and although the propositions therein presented have been ably and exhaustively briefed, there appear to be no matters presented which were overlooked by the Court in its former consideration of the case, nor does it appear that new authority is adduced which is decisive of the issues in controversy as opposed to the opinion previously filed. Such is the criteria on which petitions to rehear are considered. Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 187 S. W. (2d) 777; Jones v. Witherspoon, 182 Tenn. 498, 187 S. W. (2d) 788; Estep v. State, 183 Tenn. 325, 192 S. W. (2d) 706; City of Knoxville v. Hargis, 184 Tenn. 262, 198 S. W. (2d) 555; Louisville & N. R. Co. v. United States Fidelity & Guaranty Co., 125 Tenn. 658, 148 S. W. 671.

In our opinion, the present issues are quite different from those involving the principles annunciated in the authorities relied upon by the petitioner, Hamilton National Bank.

In the instant case, the garnishee, answering the garnishment, stated, "This defendant is not and was not at the date of the service of the writ of garnishment upon him indebted to M. S. Woods in any amount." He qualified such statement by disclosing the circumstances under which he was paid a sum of money by Maribelle Woods in purchase of a note, subsequently held by this court in a former proceeding to have been paid and extinguished prior to endorsement over to the latter; and he submitted " . . . the facts to the Court for its judgment thereon as to whether he is indebted to or has in his possession or control any choses in action or other legal or equitable interest to which the said M. S. Woods may be entitled". Hence, the question as to whether the money paid in purchase of the note was in fact advanced by M. S. Woods became the issue for determination by the Court.

While the garnishee's answer does not conform to the requisites of an interpleader, which in the strict sense is a creature of equity, it is nevertheless in the nature of an interpleader. Maribelle Woods was not made a party to the proceeding in the first instance, but the plaintiff and judgment creditor was notified of the existence of the adverse interest and Miss Woods was, subsequent to the first adjudication but while the judgment was still under the jurisdiction of the trial judge, permitted to intervene.

As pointed out, the pleadings do not present a pure interpleader, but rather the action partakes of a dual character, in which certain recognized principles, both of law and of equity, arise.

Sections 8623 and 8624 of the Code of Tennessee provide:

"New party may intervene as defendant.—In actions for the recovery of property, any person not a party thereto, on showing himself interested in the subject-matter of the suit, may be allowed to appear as defendant therein."; and,

"Defendant may substitute another, surrender property, and be discharged.—At any time before defense made, the defendant may apply to the court or justice to substitute in his place any person, not already a party, who claims the money or property in suit, by filing his affidavit, stating the facts on which he founds his application, showing that the right in the subject-matter in controversy is in such third person; that he (affiant) has no interest in the suit, and may be exposed to the claim of two or more adverse parties, denying all collusion with the party sought to be substituted, and proffering to pay the money or deliver the property into the custody of the court. If, on notice to the plaintiff and the person sought to be substituted as defendant, sufficient cause be shown, the court may order the substitution and discharge the original defendant, from liability to either party, and make such disposition, pending the suit, of the fund or property in controversy, as to secure the money, property, or its value, to the party who shall prove to be entitled. (1857-58, ch. 56, sec. 1.)"

If these provisions are to apply in any given case, it must be conceded that the action shall be one for "the recovery of property", and that a person, in order to be allowed to appear as a defendant therein must show himself interested in the subject matter. Ordinarily, money unearmarked, or otherwise distinctive, would not constitute "property" within the meaning of the statute. But where funds derive from a particular transaction

under circumstances such as are here presented and the judgment of the court is invoked as to whether they are subject to garnishment at the instance of a judgment creditor, we deem them to be of such character as to permit intervention by an adverse claimant, not a party to the proceeding, demonstrating an interest therein. As we have heretofore stated, we find no unreasonable delay or laches on the part of the intervenor in asserting her claim, nor an abuse of discretion on the part of the trial Judge in allowing the intervention.

We are of the opinion that, under the evidence adduced, the trial Judge was correct in holding that the garnishee was not indebted to M. S. Woods. This is conclusive of the bank's claim to the fund. Inasmuch as the garnishee, being informed of the filing of the intervening petition, is not contesting intervenor's claim to the money, but on the contrary showed by his answer to the garnishment a failure of consideration in the note transaction, we consider the judgment of the Court to constitute a proper disposition of all matters in controversy.

While in equity, the costs incident to an interpleader are ordinarily taxed against the fund in Court, Stansbury, Trustee, v. Bank of Amory, 13 Tenn. App. 673, the Chancellor may, in his discretion, decree otherwise. Woodard v. Metropolitan Life Ins. Co., 160 Tenn. 325, 24 S. W. (2d) 888. And costs are correctly adjudged against a judgment creditor where there are. no funds or insufficient funds in the hands of the garnishee to pay the debt and costs. See State for the Use of Arnold v. Linaweaver, 40 Tenn. 51; Huff v. Mills, 15 Tenn. 42, in the present case, the Court having held that the garnishee was not indebted to the judgment debtor,

the costs were properly taxed to the party at whose instance the garnishment was issued.

The petition to rehear is accordingly denied at the cost of the plaintiff-in-error and the sureties on its appeal bond.

McAmis and Howard, JJ., concur.